UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**KIMBERLY COWDEN and JOANNE GULA**

Plaintiff,

v.

**COLORADO STATE UNIVERSITY – PUEBLO**

Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiffs, Dr. Kimberly Cowden ("Dr. Cowden") and Dr. Joanne Gula ("Dr. Gula") by and through their attorneys, HKM Employment Attorneys, L.L.C. and Truhlar and Truhlar, L.L.P., hereby file their Complaint against Defendant, Colorado State University-Pueblo ("CSUP" or "Defendant"), and in support thereof state as follows:

### PRELIMINARY STATEMENT

1.      As members of a protected class under state and federal anti-discrimination laws, Plaintiffs suffered discrimination and adverse employment actions (including retaliation) by Plaintiffs' employer, CSUP.

2.      Plaintiffs bring this action for damages as a result of CSUP's discrimination against them on the bases of age and gender discrimination.  In retaliation for reporting the same and/or due to Plaintiffs' protected classes, CSUP adversely altered the terms and conditions of Plaintiffs'

employment and terminated Plaintiffs, in violation of state and federal law.  Plaintiffs bring claims against CSUP pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, *et seq* ("CADA"), and Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 *et seq.* ("Title IX").

## PARTIES

3.     At all relevant times during their employment with CSUP, Plaintiffs were individuals who were residents and domiciliary of Colorado.  At all times relevant to this Complaint, Plaintiffs were a member of a protected class of individuals recognized under Title VII, CADA, and Title IX.

4.     Defendant CSUP is a post-secondary educational institution with its principal office located at 2200 Bonforte Boulevard, Pueblo, Colorado 81001.

5.     At all relevant times, CSUP was an employer within the meaning of Title VII.

6.     At all relevant times, CSUP received Federal financial education assistance and, thus, was subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (a)(4).  This Court also has jurisdiction pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction over Plaintiffs' state claims.

8.     Venue is proper under 28 U.S.C. § 1391 because the conduct complained of herein occurred in the State of Colorado.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

9.      Plaintiffs incorporates by reference all paragraphs of this Complaint as though fully and separately stated herein.

10.     Plaintiffs timely filed their initial Charges of Discrimination, Number E2000007239 (Dr. Gula) and E2000007267 (Dr. Cowden) with the Colorado Civil Rights Division ("CCRD"), and Numbers 32A-2020-00037 (Dr. Gula) and 32A-2020-00047 (Dr. Cowden) with the U.S. Equal Employment Opportunity Commission ("EEOC"), for gender and age discrimination and retaliation.  Plaintiffs were issued a Right to Sue determination from the CCRD on July 28, 2020.  At the time of this filing, a Notice of Right to Sue has not been issued from the EEOC regarding Plaintiffs' above-referenced Charges; however, upon information and belief one will be received shortly.

11.     The Complaint in this matter is timely filed within 90 days of receipt of the Right to Sue from the CCRD.

## GENERAL ALLEGATIONS

12.     Plaintiffs incorporate by reference all paragraphs of this Complaint as though fully and separately stated herein.

13.     Defendant CSUP is a post-secondary educational institution.

14.     Dr. Cowden is a 51-year-old woman.

15.     Dr. Gula is a 69-year-old woman.

16.     Dr. Cowden and Dr. Gula each worked for CSUP as an Assistant Professor in the Department of Mass Communications within the College of Humanities and Social Sciences.

17.     Dr. Cowden began her employment at CSUP as a tenure-track Assistant Professor in August 2016.

18.     Dr. Gula began her employment at CSUP as a tenure-track Assistant Professor in August 2015

19.     In September 2018, CSUP canceled several classes within the Department of Mass Communications.

20.     CSUP alleged low student enrollment as the cause for class cancelations.

21.     CSUP requested that each professor within the Department of Mass Communications submit a teaching or research idea.

22.     Dr. Cowden submitted teaching and research ideas in response to Defendant's request.

23.     CSUP denied the suggested research and student development ideas Dr. Cowden had submitted.

24.     The female faculty members, including Dr. Cowden and Dr. Gula, were given a mandatory administrative project to complete.

25.     The administrative project was unrelated to Dr. Cowden and Dr. Gula's Assistant Professor faculty positions.

26.     The male faculty member, Dr. Samuel Ebersole, was permitted to pursue a non-administrative project that was relevant to his research and teaching goals.

27.     At the beginning of 2019, Dr. Cowden complained on behalf of herself and Dr. Gula about gender discrimination due to disparate treatment between female and male faculty.

28.     On January 7, 2019, Dr. Cowden emailed the Mass Communications Chair and Professor, Sam Lovato, and the Dean of College of Humanities and Social Sciences, William Folkestad, requesting a meeting with Mr. Lovato to discuss the mandatory administrative assignment provided to the female faculty members.

29.     In response to Dr. Cowden's January 7, 2019 email, Mr. Lovato made it clear that he was not interested in listening to the female faculty's concerns regarding gender discrimination.

30.     Mr. Lovato stated that the assignment for the female faculty members was non-negotiable and was required due to work-load deficiencies.

31.     On January 15, 2019, Dr. Cowden emailed Mohamed Abdelrahman, Provost and Executive Vice President of Academic Affairs, regarding her complaints of gender discrimination on behalf of the female faculty based on recent events that occurred within the College of Humanities and Social Sciences (CHASS) Mass Communications Department.

32.     Mr. Folkestad was included on this email communication in compliance with relevant CSUP policies.

33.     In her January 15, 2019 email to Dr. Abdelrahman, Dr. Cowden informed him that the female faculty members were being mandated to work on an administrative project.

34.     Dr. Cowden, in her January 15, 2019 email, also informed Dr. Abdelrahman that the administrative project was assigned without any input by female faculty, was non-negotiable according to administration, and it was not in line with her faculty teaching position.

35.     Dr. Cowden also informed Dr. Abdelrahman that the male faculty member was free to pursue his research and teaching agenda, while the administrative project did not further Dr.

Cowden's, or the other female faculty members, career or employment as Assistant Professors at CSUP.

36.    The male faculty member was provided the ability to continue furthering his career through relevant research for his field.

37.    In the January 15, 2019 email to Dr. Abdelrahman, Dr. Cowden explicitly alleged disparate treatment against herself and other CHASS female faculty based on sex.

38.    In that same email to Dr. Abdelrahman, Dr. Cowden also shared concerns that the mandated administrative project was retaliation for requesting to be treated equally.

39.    After the female faculty were assigned the mandated administrative project, Dr. Cowden attempted to engage in a productive dialogue about the possibility of a reassignment.

40.    She also informed Dr. Abdelrahman of Mr. Lovato's hostile treatment toward female faculty members within the Mass Communications Department.

41.    Mr. Lovato was disrespectful and unprofessional toward female faculty members and went so far as omitting Plaintiffs and two other female faculty members, from his electronic 'Statement from our chair' while bolstering male faculty members.

42.    Mr. Lovato's Statement congratulated female faculty members on their administrative contributions, such as creating an audio inventory system. It did not mention professional contributions to the department in their as the roles of teachers and researchers.

43.    Male faculty members received praise about their teaching and research contributions to the department, including upcoming presentations and new curriculum.

44.     That same day, on the afternoon of January 15, 2019, Dr. Abdelrahman responded to Dr. Cowden's written complaint of discrimination. He directed Dr. Cowden to discuss her complaints of discrimination with Joshua Ernst, Director & Title IX Coordinator.

45.     Dr. Abdelrahman also stated that he was consulted on the discriminatory assignments provided to the female faculty

46.     Dr. Abdelrahman directed Dr. Cowden to continue her work efforts on the administrative project.

47.     He ignored Dr. Cowden's statements about how the female faculty members, including herself, were not best suited for the project and how the assignment detracted from their goals as teachers and researchers at CSUP.

48.     The next day, on January 16, 2019, Plaintiffs met with Mr. Ernst and filed a formal complaint of gender discrimination.

49.     During that meeting, Dr. Cowden also raised concerns that her annual performance review (APR) would not be objective or accurate and requested a neutral reviewer to ensure no further retaliation for her protected complaints of discrimination.

50.     Mr. Ernst denied Dr. Cowden's request.

51.     After Plaintiffs' complaints of discrimination about Mr. Lovato's discriminatory conduct, he began retaliating against Plaintiffs even further by creating a more hostile work environment and treating them less favorably than their male colleagues. As a result of his discriminatory and retaliatory behavior, Mr. Ernst instructed Mr. Lovato to cease all communication with Dr. Cowden.

52.     On February 11, 2019, Dr. Cowden received her APR from Leticia Steffen, Professor and Associate Dean of CHASS.

53.     Ms. Steffen rated Dr. Cowden's 2018 performance extremely low.

54.     Ms. Steffen's review ignored most of Dr. Cowden accomplishments over the school year, including her improvement with student evaluations.

55.     The review focused on student complaints, although it is typical for professors to receive student complaints.

56.     Dr. Cowden's student evaluations had improved from prior years.

57.     Ms. Steffen also did not acknowledge Dr. Cowden's achievements related to her research and community involvement, two large components of her Assistant Professor position.

58.     Ms. Steffen arbitrarily and discriminatorily marked Dr. Cowden's 2018 performance as 'below expectations' in the categories of 'Teaching/Librarianship' and 'Service,' while marking her performance as 'meets expectations' in the category of 'Scholarly & Creative Activities.'

59.     Dr. Cowden's overall score for the 2018 APR was a 3.4, or meets expectations,

60.     Her overall rating barely categorized as 'meets expectations.'

61.     At or around the same time, Ms. Steffen gave Dr. Gula only "meets expectations" on her reviews whereas in previous years she was given "exceeds expectations."

62.     This low score affected Plaintiffs' ability to begin their tenure application and was shockingly lower than the prior year's APR review rating of 'exceeds expectations.'

63.     In March 2018, prior to Dr. Cowden's complaints of discrimination, she received positive feedback and encouragement at her pre-tenure review.  Dr. Gula had previously been told that she was on track for tenure and got great pre-tenure reviews.

64.     CSUP meets with tenure track faculty members during their third year of employment. This review is specifically held to provide feedback and guidance to faculty members about their likelihood of receiving tenure and how to improve in order to do so.

65.     At Dr. Cowden's pre- tenure review, the committee praised her performance and that she was on track.

66.     The one piece of advice for improvement Dr. Cowden received from CSUP during her pre-tenure review meeting was to improve her student evaluations.

67.     Based on the committee's feedback and comments, Dr. Cowden understood that she would earn tenure as long as her student evaluations improved, and she continued her performance.

68.     The very next semester, Dr. Cowden met her goal of improved student feedback.

69.     Dr. Cowden's student evaluations continued to improve through her termination.

70.     The negative and intentional shift toward Dr. Cowden and Dr. Gula and their contributions to CSUP occurred after their complaints of discrimination and was a direct result of the protected activity.

71.     Approximately two weeks after the formal complaint of discrimination, on or about January 29, 2019, CSUP interviewed Dr. Cowden and Dr. Gula regarding an investigation opened because of their complaints of discrimination.

72.     On February 24, 2019, Dr. Cowden filed a written objection to her 2018 performance review due to its discriminatory and retaliatory nature.

73.     In her objection to the APR, Dr. Cowden shared that the APR review is biased and retaliatory and requested a second, non-biased review of her 2018 performance.

74.     On April 10, 2019, CSUP informed Dr. Cowden and Dr. Gula that they were each recommended for termination from their tenure-track Associate Professor positions.

75.     The April 10, 2019 termination letter noted that termination of Dr. Cowden and Dr. Gula's employment came at "the recommendation of the department chair and Dean" - the very same individuals that they had initiated a discrimination investigation against.

76.     The April 10, 2019 letter noted that the recommendation was pending approval by the President.

77.     The April 10, 2019 letter referred to budgetary issues, including "declining enrollment" and "over staffing" as the reasons for Plaintiffs' recommendation for termination.

78.     Dr. Cowden and Dr. Gula had a full teaching schedule for fall 2019.

79.     Dr. Samuel Ebersole had his teaching schedule reduced due to low enrollment in his classes.

80.     On May 13, 2019, the President's approval to terminate Plaintiffs' employment from CSUP followed without any response to the ongoing complaint of discrimination.

81.     Plaintiffs' complaint of gender discrimination was still pending, and no determination of the investigation had been shared.

82.     On May 15, 2019, CSUP provided the results of the investigation completed related to Plaintiffs' gender discrimination complaint.

83.     Approximately two weeks later, on May 30, 2019, CSUP sent Dr. Cowden and Dr. Gula a letter stating that they would not be assigned a teaching course load, nor would they have any service or research obligations to CSU Pueblo for the 2019- 2020 academic year.

84.     Despite CSUP's allegations that Plaintiffs' terminations were for budgetary reasons, CSUP promised to pay each their entire salary and benefits for the whole 2019-2020 academic year.

85.     Upon information and belief, both professors had classes that were filled for the upcoming semester prior to their termination.

86.     In June 2019, Plaintiffs' received communications that evidenced additional funds were available, contrary to CSUP's allegations that faculty cuts were necessary for "over staffing."

87.     Thereafter, CSUP hired a new male faculty member to teach the classes previously taught by Dr. Cowden and Dr. Gula.

88.     CSUP wanted to modernize and appeal to students within the Mass Communications department.

89.     CSUP's goals do not involve older female faculty.

90.     Now, the CSUP Mass Communication department faculty is comprised of male and younger female employees.

## FIRST CLAIM FOR RELIEF
**(Discrimination Based on Gender in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
("Title VII"))**

91.     Plaintiffs incorporate by reference all paragraphs of this Complaint as though fully and separately stated herein.

92.     Plaintiffs were an "employee" as defined in 42 U.S.C. § 2000e(f). Defendant is an "employer" as defined in 42 U.S.C. §§ 2000e(b).

93.     Title VII prohibits discrimination based on gender in employment.

94.     Based on the above-described acts, practices, and omissions, Defendant engaged in unlawful discrimination under Title VII based on Plaintiffs' gender (female).

95.     Defendant treated Plaintiffs less favorably than similarly situated male counterparts.

96.     Defendant's discrimination was aimed at Plaintiffs because of their gender, resulting in adverse impacts to the terms and conditions of Plaintiffs' employment including, but not limited to, termination of Plaintiffs' employment and discriminatory terms and conditions of employment.

97.     Plaintiffs' gender origin was a motivating factor in Defendant's termination of Plaintiffs' employment.  Defendant's asserted reasons for terminating Plaintiffs are mere pretext for illegal discrimination.

98.     Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its agents, discriminated against Plaintiffs on the basis of gender and directly and proximately caused their severe injuries, economic and non-economic damages, including emotional distress, and losses.

99.     Defendant's acts and conduct were committed with malice or with reckless indifference to Plaintiffs' federally protected rights within the meaning of Title VII.

100.    The unlawful employment practices complained of above were and are intentional.

**SECOND CLAIM FOR RELIEF**
**(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)**

101.    Plaintiffs incorporate by reference all paragraphs of this Complaint as though fully and separately stated herein.

102.    Plaintiffs' opposition and complaints regarding Defendant's unlawful discrimination were protected activities within the meaning of Title VII.

103.    Defendant unlawfully retaliated against Plaintiffs in the terms and conditions of their employment and subjected Plaintiffs to retaliatory treatment because they engaged in the above-described statutorily protected activities.

104.    Defendant further failed and refused to take corrective action that would prevent Plaintiffs from being subjected to further discrimination and retaliatory treatment.

105.    A causal connection exists between Plaintiffs' protected activities and Defendant's unlawful retaliation.

106.    Defendant's above-described retaliatory conduct, including its elimination of Plaintiffs' teaching and work-related duties, is of the type that would be materially adverse to a reasonable employee and chill such employee's willingness to engage in protected activity, such as opposing discrimination by making internal reports of same to management for Defendant.

107.    In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law.

108.    As a result of Defendant's retaliatory conduct, Plaintiffs have suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and are entitled to

general and special damages, and economic damages including front and back pay.  Plaintiffs are also entitled to and seek attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### THIRD CLAIM FOR RELIEF
**(Discrimination Based on Gender and/or Age in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq.*)**

109.    Plaintiffs incorporate by reference all paragraphs of this Complaint as though fully and separately stated herein.

110.    Defendant subjected Plaintiffs to less favorable terms and conditions of employment based on gender and/or age, including, but not limited to, removing all of Plaintiffs' job related duties and terminating Plaintiffs' employment.

111.    Defendant's above-described conduct constitutes discrimination based on Plaintiffs' gender (female) and/or age (over 40) in violation of CADA.

112.    In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

113.    As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and Plaintiffs are entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

### FOURTH CLAIM FOR RELIEF
**(Retaliation in violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq.*)**

114.    Plaintiffs incorporate by reference all paragraphs of this Complaint as though fully and separately stated herein.

115.   Plaintiffs participated in statutorily protected activity by opposing unlawful practices under CADA, including discrimination and retaliation based on Plaintiffs' sex and/or age.

116.   As a result of Plaintiffs' protected opposition to discrimination, Defendant retaliated by subjecting Plaintiffs to less favorable terms and conditions of employment as described in this Complaint.

117.   In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

118.   As a direct and proximate result of Defendant's above-described conduct, Plaintiffs have suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and Plaintiffs are entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## FIFTH CLAIM FOR RELIEF
### (Sex Discrimination in violation of Title IX of the Education Amendments of 1972, as amended)

119.   Plaintiffs incorporate by reference all paragraphs of this Complaint as though fully and separately stated herein.

120.   Defendant subjected Plaintiffs to discrimination on the basis of sex, including by: subjecting them to sufficiently severe or pervasive harassment based on their sex so as to alter the conditions and terms of their employment; condoning or tolerating such harassment; subjecting Plaintiffs to less favorable terms and conditions of employment including, but not limited to,

eliminating responsibilities, assigning administrative work and disallowing research level work; and terminating Plaintiffs.

121.   Defendant's actions toward Plaintiffs were done knowingly and intentionally or with reckless disregard of her rights.

122.   Defendant's conduct discriminated against Plaintiffs on the basis of sex in violation of Title IX.

123.   As a direct and proximate result of Defendant's actions, Plaintiffs suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### SIXTH CLAIM FOR RELIEF
**(Retaliation in violation of Title IX of the Education Amendments of 1972)**

124.   Plaintiffs incorporate by reference all paragraphs of this Complaint as though fully and separately stated herein.

125.   Plaintiffs complained about sex discrimination that was unlawful under Title IX.

126.   As a result of Plaintiffs' complaints about sex discrimination, CSUP retaliated against Plaintiffs by subjecting Plaintiffs to the different terms and conditions of employment as described in this Complaint, including termination.

127.   Defendant's retaliation against Plaintiffs constitutes sex discrimination in violation of Title IX.

128.   Defendant's actions taken against Plaintiffs were done knowingly and intentionally or with reckless disregard of Plaintiffs' rights.

129. As a direct and proximate result of Defendant's actions, Plaintiffs suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor against Defendant and order all economic and noneconomic damages, including the following relief, as allowed by law:

A.     Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B.     Back pay and benefits;

C.     Front pay and benefits;

D.     Attorneys' fees and costs of this action (including expert witness fees), as permitted by law;

E.     Pre-judgment and post-judgment interest at the highest lawful rate; and

F.     Such further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs demand a jury trial on all issues so triable to at least six (6) persons.

Respectfully submitted this 26th day of October 2020.

HKM Employment Attorneys, LLP

*/s/ Claire Hunter*
Claire Hunter
730 17th Street, Suite 720
Denver, CO 80202
Phone: 720-668-8989
Email: Chunter@HKM.com

Truhlar and Truhlar, LLP

*/s/ Kaitlin I. Spittell*
Kaitlin I. Spittell
Robert J. Truhlar
7340 E. Caley Ave., Suite 310
Centennial, CO 80111
Phone: 303.794.2404
Email: KSpittell.Truhlar@gmail.com
          roberttruhlar@att.net

*Attorneys for Plaintiffs*