IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03197-RBJ

KIMBERLEY COWDEN AND JOANNE GULA

      Plaintiffs,

v.

THE BOARD OF GOVERNORS OF THE COLORADO STATE UNIVERSITY SYSTEM
BY AND THROUGH COLORADO STATE UNIVERSITY-PUEBLO,

      Defendant.

---

## SCHEDULING ORDER

---

### 1.    DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

Pursuant to the January 6, 2021 minute order, Doc. # 18, a Scheduling Conference in the above-captioned case has not been scheduled due to the COVID-19 pandemic. The Court has reviewed the proposed order and issues this Scheduling Order with its modifications and comments noted in Track Changes for easier reference.

### 2.    STATEMENT OF JURISDICTION

The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. § 1331, and specifically under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

### 3.    STATEMENT OF CLAIMS AND DEFENSES

**a.  Plaintiff:**

Plaintiffs' claims against Defendant are for 1) Sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 2) Retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 3) Sex discrimination under Title IX of The Education Amendments Of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"); 3) Retaliation under Title IX of The Education Amendments Of 1972, 20 U.S.C. § 1681 et seq. ("Title IX").

Dr. Cowden and Dr. Gula each worked for CSUP as an Assistant Professor in the Department of Mass Communications within the College of Humanities and Social Sciences. Dr. Cowden began her employment at CSUP as a tenure-track Assistant Professor in August 2016. Dr. Gula began her employment at CSUP as a tenure-track Assistant Professor in August 2015

In September 2018, CSUP canceled several classes within the Department of Mass Communications. CSUP alleged low student enrollment as the cause for class cancelations. CSUP requested that each professor within the Department of Mass Communications submit a teaching or research idea. Dr. Cowden submitted teaching and research ideas in response to Defendant's request. CSUP denied the suggested research and student development ideas Dr. Cowden submitted.

The female faculty members, including Dr. Cowden and Dr. Gula, were given a mandatory administrative project to complete. The administrative project was unrelated to Dr. Cowden and Dr. Gula's Assistant Professor faculty positions. The male faculty member, Dr. Samuel Ebersole, was permitted to pursue a non- administrative project that was relevant to his research and teaching goals. At the beginning of 2019, Dr. Cowden

complained on behalf of herself and Dr. Gula about gender discrimination due to disparate treatment between female and male faculty.

On January 7, 2019, Dr. Cowden emailed the Mass Communications Chair and Professor, Sam Lovato, and the Dean of College of Humanities and Social Sciences, William Folkestad, requesting a meeting with Mr. Lovato to discuss the mandatory administrative assignment provided to the female faculty members. In response to Dr. Cowden's January 7, 2019 email, Mr. Lovato made it clear that he was not interested in listening to the female faculty's concerns regarding gender discrimination. Mr. Lovato stated that the assignment for the female faculty members was non- negotiable and was required due to work-load deficiencies.

On January 15, 2019, Dr. Cowden emailed Mohamed Abdelrahman, Provost and Executive Vice President of Academic Affairs, regarding her complaints of gender discrimination on behalf of the female faculty based on recent events that occurred within the College of Humanities and Social Sciences (CHASS) Mass Communications Department. Mr. Folkestad was included on this email communication in compliance with relevant CSUP policies. In her January 15, 2019 email to Dr. Abdelrahman, Dr. Cowden informed him that the female faculty members were being mandated to work on an administrative project. Dr. Cowden, in her January 15, 2019 email, also informed Dr. Abdelrahman that the administrative project was assigned without any input by female faculty, was non-negotiable according to administration, and it was not in line with her faculty teaching position. Dr. Cowden also informed Dr. Abdelrahman that the male faculty member was free to pursue his research and teaching agenda, while the

3

administrative project did not further Dr. Cowden's, or the other female faculty members, career or employment as Assistant Professors at CSUP. The male faculty member was provided the ability to continue furthering his career through relevant research for his field.

In the January 15, 2019 email to Dr. Abdelrahman, Dr. Cowden explicitly alleged disparate treatment against herself and other CHASS female faculty based on sex. In that same email to Dr. Abdelrahman, Dr. Cowden also shared concerns that the mandated administrative project was retaliation for requesting to be treated equally. After the female faculty were assigned the mandated administrative project, Dr. Cowden attempted to engage in a productive dialogue about the possibility of a reassignment. She also informed Dr. Abdelrahman of Mr. Lovato's hostile treatment toward female faculty members within the Mass Communications Department.

Mr. Lovato was disrespectful and unprofessional toward female faculty members and went so far as omitting Plaintiffs and two other female faculty members, from his electronic 'Statement from our chair' while bolstering male faculty members. Mr. Lovato's Statement congratulated female faculty members on their administrative contributions, such as creating an audio inventory system. It did not mention professional contributions to the department in their as the roles of teachers and researchers. Male faculty members received praise about their teaching and research contributions to the department, including upcoming presentations and new curriculum.

That same day, on the afternoon of January 15, 2019, Dr. Abdelrahman responded to Dr. Cowden's written complaint of discrimination.  He directed Dr. Cowden to discuss her complaints of discrimination with Joshua Ernst, Director & Title IX Coordinator. Dr.

Abdelrahman also stated that he was consulted on the discriminatory assignments provided to the female faculty Dr. Abdelrahman directed Dr. Cowden to continue her work efforts on the administrative project.  He ignored Dr. Cowden's statements about how the female faculty members, including herself, were not best suited for the project and how the assignment detracted from their goals as teachers and researchers at CSUP.

The next day, on January 16, 2019, Plaintiffs met with Mr. Ernst and filed a formal complaint of gender discrimination.   During that meeting, Dr. Cowden also raised concerns that her annual performance review (APR) would not be objective or accurate and requested a neutral reviewer to ensure no further retaliation for her protected complaints of discrimination. Mr. Ernst denied Dr. Cowden's request. After Plaintiffs' complaints about Mr. Lovato's discriminatory conduct, he began retaliating against Plaintiffs even further by creating a more hostile work environment and treating them less favorably than their male colleagues. As a result of his discriminatory and retaliatory behavior, Mr. Ernst instructed Mr. Lovato to cease all communication with Dr. Cowden.

On February 11, 2019, Dr. Cowden received her APR from Leticia Steffen, Professor and Associate Dean of CHASS. Ms. Steffen rated Dr. Cowden's 2018 performance extremely low. Ms. Steffen's review ignored most of Dr. Cowden's accomplishments over the school year, including her improvement with student evaluations. The review focused on student complaints, although it is typical for professors to receive student complaints. Dr. Cowden's student evaluations had improved from prior years. Ms. Steffen also did not acknowledge Dr. Cowden's achievements

related to her research and community involvement, two large components of her Assistant Professor position.

Ms. Steffen arbitrarily and discriminatorily marked Dr. Cowden's 2018 performance as 'below expectations' in the categories of 'Teaching/Librarianship' and 'Service,' while marking her performance as 'meets expectations' in the category of 'Scholarly & Creative Activities. Dr. Cowden's overall score for the 2018 APR was a 3.4, or meets expectation. Her overall rating barely categorized as 'meets expectations.'

At or around the same time, Ms. Steffen gave Dr. Gula only "meets expectations" on her reviews whereas in previous years she was given "exceeds expectations." This low score affected Plaintiffs' ability to begin their tenure application and was shockingly lower than the prior year's APR review rating of 'exceeds expectations.'

In March 2018, prior to Dr. Cowden's complaints of discrimination, she received positive feedback and encouragement at her pre-tenure review.  Dr. Gula had previously been told that she was on track for tenure and got great pre-tenure reviews.  CSUP meets with tenure track faculty members during their third year of employment.  This review is specifically held to provide feedback and guidance to faculty members about their likelihood of receiving tenure and how to improve in order to do so.

At Dr. Cowden's pre-tenure review, the committee praised her performance and that she was on track. The one piece of advice for improvement Dr. Cowden received from CSUP during her pre-tenure review meeting was to improve her student evaluations. Based on the committee's feedback and comments, Dr. Cowden understood that she would earn tenure as long as her student evaluations improved, and she continued her

performance. The very next semester, Dr. Cowden met her goal of improved student feedback. Dr. Cowden's student evaluations continued to improve through her termination. The negative and intentional shift toward Dr. Cowden and Dr. Gula and their contributions to CSUP occurred after their complaints of discrimination and was a direct result of the protected activity.

Approximately two weeks after the formal complaint of discrimination, on or about January 29, 2019, CSUP interviewed Dr. Cowden and Dr. Gula regarding an investigation opened because of their complaints of discrimination.

On February 24, 2019, Dr. Cowden filed a written objection to her 2018 performance review due to its discriminatory and retaliatory nature. In her objection to the APR, Dr. Cowden shared that the APR review is biased and retaliatory and requested a second, non-biased review of her 2018 performance.

On April 10, 2019, CSUP informed Dr. Cowden and Dr. Gula that they were each recommended for termination from their tenure-track Associate Professor positions. The April 10, 2019 termination letter noted that termination of Dr. Cowden and Dr. Gula's employment came at "the recommendation of the department chair and Dean" - the very same individuals that they had initiated a discrimination investigation against. The April 10, 2019 letter noted that the recommendation was pending approval by the President. The April 10, 2019 letter referred to budgetary issues, including "declining enrollment" and "over staffing" as the reasons for Plaintiffs' recommendation for termination. Dr. Cowden and Dr. Gula had a full teaching schedule for fall 2019. Dr. Samuel Ebersole had his teaching schedule reduced due to low enrollment in his classes.

On May 13, 2019, the President's approval to terminate Plaintiffs' employment from CSUP followed without any response to the ongoing complaint of discrimination. Plaintiffs' complaint of gender discrimination was still pending, and no determination of the investigation had been shared.

On May 15, 2019, CSUP provided the results of the investigation completed related to Plaintiffs' gender discrimination complaint.

Approximately two weeks later, on May 30, 2019, CSUP sent Dr. Cowden and Dr. Gula a letter stating that they would not be assigned a teaching course load, nor would they have any service or research obligations to CSUP for the 2019- 2020 academic year. Despite CSUP's allegations that Plaintiffs' terminations were for budgetary reasons, CSUP promised to pay each their entire salary and benefits for the whole 2019-2020 academic year. Upon information and belief, both professors had classes that were filled for the upcoming semester prior to their termination.

In June 2019, Plaintiffs' received communications that evidenced additional funds were available, contrary to CSUP's allegations that faculty cuts were necessary for "over staffing." Thereafter, CSUP hired a new male faculty member to teach the classes previously taught by Dr. Cowden and Dr. Gula. CSUP wanted to modernize and appeal to students within the Mass Communications department. CSUP's goals do not involve older female faculty. Now, the CSUP Mass Communication department faculty is comprised of male and younger female employees.

b.    **Defendant:**

8

Defendant, Colorado State University-Pueblo ("CSUP"), denies that it subjected Plaintiffs to illegal discrimination based on their gender or that it retaliated against Plaintiffs for complaining about their alleged discrimination.

CSUP expects to rely on the additional affirmative defenses, including that Plaintiffs failed to state claims upon which relief may be granted.  Plaintiffs failed to mitigate their damages, if any, in the manner and to the extent required by law. Plaintiffs did not suffer any differential treatment or deprivation of rights during their employment or after their termination from CSUP. CSUP acted in compliance with applicable federal and state laws and regulations; the conduct of CSUP was at all times lawful, justified, and in good faith. CSUP had legitimate, non-discriminatory, and non-retaliatory business and policy reasons for the employment decisions it made concerning Plaintiffs.  CSUP was motivated by legitimate business concerns throughout Plaintiffs' employment.  CSUP would have taken the same action with regard to Plaintiffs without regard to any protected conduct or status of Plaintiffs. CSUP took no unlawful action based on Plaintiffs' gender. CSUP did not intentionally discriminate against Plaintiffs based on Plaintiffs' gender nor did CSUP act with bad faith.  Plaintiffs' damages, if any, are subject to offset by amounts received from collateral sources.  Plaintiffs were terminated because of low student enrollment, not because of gender discrimination or in retaliation for complaints of gender discrimination.  Some or all of Plaintiff's claims may be barred for lack of jurisdiction, failure to exhaust administrative remedies, or failure to comply with jurisdictional filing prerequisites.  Plaintiffs' claims of discriminatory conduct are barred except to the extent they are within the scope of the administrative proceedings before the Equal Employment

Opportunity Commission.   CSUP exercised reasonable care to prevent and promptly correct any and all alleged discriminatory behavior, and Plaintiffs unreasonably failed to take advantage of any preventative or corrective opportunities provided by CSUP or to avoid harm otherwise.  Plaintiffs' damages, if any, are the result of Plaintiffs' own conduct. Some or all of Plaintiffs' claimed damages may be statutorily barred or subject to statutory limitations.  Plaintiffs' claims are frivolous, groundless, and brought in bad faith and/or for purposes of harassment.  Accordingly, CSUP is entitled to receive its costs and attorneys' fees incurred in the defense of this matter. CSUP did not subject Plaintiffs to severe or pervasive harassment.  CSUP did not condone or tolerate harassment and was not deliberately indifferent to harassment.

## 4.    UNDISPUTED FACTS

The following facts are undisputed:

A.    Dr. Cowden is a 51-year-old woman.

B.    Dr. Gula is a 69-year-old woman.

C.    Dr. Cowden began her employment at CSUP as a tenure-track Assistant Professor in August 2016.

D.    Dr. Gula began her employment at CSUP as a tenure-track Assistant Professor in August 2015.

E.    Several classes within the Department of Mass Communications were cancelled.

F.    Defendant alleged low student enrollment as the cause for class cancelations.

G.     At the beginning of 2019, Dr. Cowden complained on behalf of herself and Dr. Gula about gender discrimination due to disparate treatment between female and male faculty.

H.     On January 7, 2019, Dr. Cowden emailed the Mass Communications Chair and Professor, Sam Lovato, and the Dean of College of Humanities and Social Sciences, William Folkestad.

I.      On January 15, 2019, Dr. Cowden emailed Mohamed Abdelrahman, Provost and Executive Vice President of Academic Affairs.

J.      Mr. Folkestad was included on this email communication.

K.     On the afternoon of January 15, 2019, Dr. Abdelrahman responded to Dr. Cowden's written complaint of discrimination. He directed Dr. Cowden to discuss her complaints of discrimination with Joshua Ernst, Director & Title IX Coordinator.

L.     Plaintiffs met with Mr. Ernst and filed a formal complaint of gender discrimination.

M.     On February 11, 2019, Dr. Cowden received her APR from Leticia Steffen, Professor and Associate Dean of CHASS.

N.     CSUP meets with tenure track faculty members during their third year of employment. This review is specifically held to provide feedback and guidance to faculty members about their likelihood of receiving tenure and how to improve in order to do so.

O.      Approximately two weeks after the formal complaint of discrimination, on or about January 29, 2019, CSUP interviewed Dr. Cowden and Dr. Gula regarding an investigation opened because of their complaints of discrimination.

P.      Dr. Cowden filed a written objection to her 2018 performance review.

Q.      On April 10, 2019, CSUP informed Dr. Cowden and Dr. Gula that they were each recommended for termination from their tenure-track Associate Professor positions.

R.      On May 13, 2019, the President's approval to terminate Plaintiffs' employment from CSUP followed without any response to the ongoing complaint of discrimination.

S.      Plaintiffs' complaint of gender discrimination was still pending, and no determination of the investigation had been shared.

T.      On May 15, 2019, CSUP provided the results of the investigation completed related to Plaintiffs' gender discrimination complaint.

U.      Approximately two weeks later, on May 30, 2019, CSUP sent Dr. Cowden and Dr. Gula a letter.

### 5.      COMPUTATION OF DAMAGES

**a. Plaintiffs:**

A.      A permanent injunction enjoining Defendant, its management personnel, employees, agents, successors, assigns, and all other persons in active concert or

participation with them, from engaging in any employment practice which discriminates on the basis of gender;

B.      An Order requiring Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities to female employees;

C.      An Order requiring Defendant to make whole Plaintiffs by providing each Plaintiff with appropriate lost earnings and benefits, and other economic loss, with pre-judgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

Specifically, Dr. Gula has incurred $35,985.01 in past lost wages.  In addition, she expects to continue to suffer losses extending into the future up to and including $52,500 per year.  In addition, Dr. Gula has suffered and will continue to suffer a loss of benefits as well.

Dr. Cowden expects to suffer future losses up to and including $56,550 per year plus benefits.

D.      That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require Defendant to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable Title VII, Title IX, and ADEA provisions;

E.      For lost monies and damages pertaining to out-of-pocket expenses, including but not limited to the costs for Plaintiffs to move after termination and the loss of tuition assistance for family members;

F.     An Order requiring Defendant to make Plaintiffs whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience and mental anguish in amounts to be proven at trial;

G.     Such further relief as the Court deems just, necessary and proper;

H.     Pre-and-post-judgment interest; and

I.     Costs and attorneys' fees incurred in this action.

**b.  Defendant:**  The Defendant seeks attorney's fees and costs as may be deemed appropriate by the Court.

## 6.     REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

a.     Date of Rule 26(f) meeting.

On January 25, 2021, counsel met to complete their pre-scheduling conferral obligations pursuant to Fed. R. Civ. P. 26(f).  Counsel completed the 26(f) discussion on February 12, 2021.

b.     Names of each participant and party he/she represented.

For the Plaintiff:     Kaitlin I. Spittell and Claire E. Hunter

For the Defendant:   Allison Ailer and Elizabeth Phillips

c.     Statement as to when Rule 26(a)(1) disclosures were made or will be made.

The parties will exchange the pleadings for initial disclosures no later than Monday, March 8, 2021 pursuant to Fed. R. Civ. P. 26(a)(1).  The parties will provide the initial disclosure documents to each party no later than March 8, 2021.

      d.     <u>Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).</u>

None.

      e.     <u>Statement concerning any agreements to conduct informal discovery.</u>

The parties have not reached an agreement to conduct informal discovery but will continue to consider that possibility.  Defendant provided early disclosures of certain documents upon the request of Plaintiff to facilitate discussions of Defendant's planned motion to dismiss Plaintiff's Complaint.

      f.     <u>Statement concerning any further agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.</u>

The parties have not reached an agreement on reducing discovery and other litigation costs, other than the limitations set forth in this proposed Scheduling Order. The parties will continue to consider the possibility of such agreements.  The parties have agreed to use a unified exhibit numbering system (Plaintiffs will use numbers and Defendant will use letters) for depositions and will comply with Local Rules and Practice Standards concerning exhibits and witness lists.

      g.     <u>Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.</u>

The parties anticipate that their claims or defenses will involve the discovery of some electronically stored information ("ESI"), but at this time do not anticipate that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

To the extent that discovery or disclosures involve information or records in their electronic form, the parties have taken and will continue to take steps to preserve such information in its native format to preserve metadata.  The parties submit that the following steps have been taken to comply with the obligation to preserve ESI.

**Plaintiff:**  Plaintiffs' attorneys have taken appropriate steps to preserve ESI relevant to this lawsuit by obtaining all known electronically stored information and/or documents from Dr. Cowden and Dr. Gula.

**Defendant:**  Defendant has taken appropriate steps to preserve ESI.

h.    <u>Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case</u>.

The parties certify that, as required by Fed. R. Civ. P. 26(f), they have discussed the possibility for a prompt settlement or resolution of the case by alternate dispute resolution.  The parties do not believe a settlement is likely at this stage in the litigation, but Plaintiffs have made an early litigation demand in good faith.

## 7.    CONSENT

The parties discussed the use of a Magistrate Judge pursuant to D.C.COLO.LCivR 72.2 and 28 U.S.C. § 636(c)(1).  All parties have not consented to the exercise of jurisdiction of a Magistrate Judge, and Plaintiff's counsel filed the required Consent Form on January 4, 2021.

## 8.    DISCOVERY LIMITATIONS

a.    <u>Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules</u>.

- The parties propose a limitation of twenty five (25) interrogatories and ten (10) depositions per party.

b.      <u>Limitations which any party proposes on the length of depositions</u>.

- The parties agree that depositions should be limited to no more than 7 hours per deposition.

c.      <u>Limitations which any party proposes on the number of requests for production and/or requests for admission</u>

- The parties propose a limitation of twenty-five (25) requests for production of documents per party.  *See* Fed. R. Civ. P. 34.

- The parties propose a limitation of twenty-five (25) requests for admission per party.

d.      <u>Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:</u>

<u>Deadline for Interrogatories</u>:

Each party shall submit any requests for interrogatories at least 40 days prior to the discovery completion date.

<u>Deadline for Requests for Production of Documents and/or Admissions</u>:

Each party shall submit any sets of Requests for Production and/or Requests for Admissions at least 40 days prior to the discovery completion date.

e.      <u>Other Planning or Discovery Orders</u>.

The parties discussed the possibility of a protective order.  The parties believe one may be necessary in light of the possible need to disclose sensitive information, including but

not limited to, employee records and business records.  Please conform any proposed Protective Order to this Court's practice standards.  Also, the parties will not file motions or responses concerning discovery disputes.  Rather, after counsel have conferred by telephone or in person, they will contact Chambers and set a telephonic hearing.  If the dispute concerns responses to paper discovery (interrogatories, etc.), please provide the Court with the disputed question and responses before the hearing.

## 9.    CASE PLAN AND SCHEDULE

a.    <u>Deadline for Joinder of Parties and Amendment of Pleadings</u>: The first business day following 45 days from the date of the filing of the proposed scheduling order on Tuesday, February 16, 2021, which is **Friday, April 2, 2021**.

b.    <u>Discovery Cut-off</u>: To save on the cost of supplemental reports, the Parties have separated the discovery cut-off into two separate parts: Fact Discovery and Expert Discovery.  The separation of discovery will also allow for expert depositions to occur after all written discovery and other depositions have been completed. Defendant does not agree with Plaintiffs' proposal of separated discovery cut-off deadlines for Fact Discovery and Expert Discovery.

**Because the parties cannot agree, the Court sets the following discovery deadlines: Fact Discovery October 15, 2021.  Expert discovery December 15, 2021.**

c.    <u>Dispositive Motion Deadline</u>:  **January 14, 2022.  Response: February 11, 2022. Reply: February 28, 2022.**

d.    <u>Expert Witness Disclosures</u>:

1.    The parties shall identify anticipated fields of expert testimony, if any.

Plaintiffs may call experts to testify regarding Plaintiffs' damages and

Defendant's alleged budgetary issues.

The Defendant may call a rebuttal expert.

2.    Limitations which the parties propose on the use or number of expert witnesses.

Two expert witnesses per side.

3.    The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before _____, 20_____.

October 15, 2021.

4.    The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before _____, 20_____.

November 15, 2021. e.    <u>Identification of Persons to Be Deposed</u>:

Plaintiffs' depositions of fact witnesses:

| Name of Deponent | Topic of Deposition | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|---|
| Rule 30(b)(6) Colorado State University-Pueblo Representative | Policies and Procedures related to evaluating the performance of professors, policies on the termination of professors, and the reorganization of the Communication department | TBD | 9:00 a.m. | 7 hours |
| Sam Lovato, Mass | His knowledge of the termination of Dr. Cowden and Dr. Gula's termination, | TBD | 9:00 a.m. | 7 hours |

| Name of Deponent | Topic of Deposition | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|---|
| Communications Chair | his knowledge regarding their complaints of discrimination and his own actions | | | |
| Dean William Folkestad | His knowledge of the reorganization of the Communications department, his involvement in the decision to terminate Plaintiffs, and his knowledge of Plaintiffs' complaints of discrimination | TBD | 9:00 a.m. | 4 hours |
| Provost Mohamed Abdelrahman | His knowledge regarding Plaintiffs' complaints of discrimination | TBD | 9:00 a.m. | 2 hours |
| Dr. Samuel Ebersole | His knowledge about the female professors' administrative assignment and the research project he was permitted to pursue | TBD | 9:00 a.m. | 4 hours |
| Joshua Ernst | His knowledge regarding Plaintiffs' complaints of gender discrimination and his investigation. | TBD | 9:00 a.m. | 2 hours |
| Leticia Steffen | Her knowledge of Dr. Cowden's work performance and evaluation. | TBD | 9:00 a.m. | 2 hours |
| Witnesses identified through disclosures and discovery | | | | |

Defendant's depositions of fact witnesses:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Kimberly Cowden | TBD | TBD | 7 hours |
| Joanne Gula | TBD | TBD | 7 hours |
| Witnesses identified through disclosures and discovery | TBD | TBD | TBD |

## 10.    DATES FOR FURTHER CONFERENCES

a.    Status conferences will be held in this case at the following dates and times:_____.

b.    A final pretrial order is not required.  The Court will conduct a Trial Preparation Conference and resolve any remaining disputes concerning trial witnesses, trial exhibits, in limine issues, and jury instructions.  Proposed jury instructions should be emailed to Chambers one week before the TPC, with disputed versions of instructions paired.  **Please jointly contact Chambers at jackson_chambers@cod.uscourts.gov within 14 days to select TPC and Trial dates from the following options:**

**Proposed 5-day Jury trial dates: 6/6/2022; 6/13/2022; and 6/20/2022. Proposed Trial Preparation Conference dates:  5/13/2022 at 9:00; 5/20/2022 at 9:00; or 6/3/2022 at 1:30.**

## 11.    OTHER SCHEDULING MATTERS

a.    <u>Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.</u>

The Parties are considering an Early Neutral Evaluation of the case pursuant to D.C.COLO.LCivR 16.6(a) and D.C.COLO.LCivR 16.6(b).

      b.    <u>Anticipated length of trial and whether trial is to the court or jury.</u>

Counsel anticipate a five-day trial to a jury.

      c.    <u>Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's other Colorado facilities.</u>

None.

## 12.    NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with Practice Standards on Motions for Extension of Time.

Counsel will be expected to be familiar and to comply with the Practice Standards established by the Court presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this 2nd day of March, 2021.

BY THE COURT:

United States Judge

APPROVED on February 16, 2021:

| HKM EMPLOYMENT ATTORNEYS, LLP | PHILIP J. WEISER |
|---|---|
| | Attorney General |
| _/s/ Claire E. Hunter_____ | |
| Claire E. Hunter | _/s/ Elizabeth Phillips_____ |
| 730 17th Street, Suite 720 Denver, CO | ELIZABETH PHILLIPS* |
| 80202 Counsel for Plaintiff's | Assistant Attorney General |
| chunter@hkm.com | ALLISON R. AILER* |
| | Senior Assistant Attorney General |
| | Civil Litigation & Employment Section |
| TRUHLAR AND TRUHLAR, LLP | J. PATRICK HIZON WARWICK-DIAZ* |
| | Assistant Attorney General |
| Kaitlin I. Spittell | State Services/Higher Education Unit |
| Truhlar and Truhlar, L.L.P. | Attorneys for Defendant |
| 7340 E. Caley Avenue, Suite 310 | 1300 Broadway, 10th Floor |
| Centennial, CO 80111 | Denver, CO  80203 |
| Phone: 303-794-2404 | Telephone: (720) 508-6000 |
| Fax: 303-794-1142 | Email:  allison.ailer@coag.gov |
| Email: kspittell.truhlar@gmail.com | Elizabeth.phillips@coag.gov |
| | Patrick.Warwick-Diaz@coag.gov |
| **Attorneys for Plaintiffs** | |
| | **Attorneys for Defendant** |