IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:20-cv-03197-RMR-STV

KIMBERLY COWDEN and JOANNE GULA,

        Plaintiffs,

v.

THE BOARD OF GOVERNORS OF THE COLORADO STATE UNIVERSITY SYSTEM,
by and through Colorado State University-Pueblo, et al.,

        Defendants.

---

### AMENDED ORDER

---

Pending before the Court is the Motion to Dismiss of Defendants William Folkestad, Mohamed Abdelrahman, and Timothy Mottet, ECF No. 47. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### I.      BACKGROUND

Plaintiffs Dr. Kimberly Cowden and Dr. Joanne Gula were Assistant Professors in the Department of Mass Communications within the College of Humanities and Social Sciences at the Colorado State University-Pueblo ("CSUP") from August of 2016 and August of 2015, respectively, until May 30, 2019, when they allege that they received letters "stating that they would not be assigned a teaching course load, nor would they have any service or research obligations to CSUP for the 2019–2020 academic year." ECF No. 44 ¶¶ 20–22, 107. In their Third Amended Complaint, which is now the operative

complaint in this action, *see* ECF Nos. 41–45, Plaintiffs allege that they received these letters "after they each spoke out about gender discrimination."  ECF No 44 ¶ 109.  They bring six claims of relief against various Defendants.  *Id.* ¶¶ 123–217.  Against Defendant the Board of Governors of the Colorado State University System, by and through Colorado State University-Pueblo ("CSUP"), they bring the following four claims:

1. "Discrimination Based on Gender in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII")," *id.* ¶¶ 123–34;

2. "Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*," *id.* ¶¶ 135–42;

3. "Sex Discrimination in violation of Title IX of the Education Amendments of 1972, as amended," *id.* ¶¶ 143–47; and

4. "Retaliation in violation of Title IX of the Education Amendments of 1972," *id.* ¶¶ 148–53.

Against the individual Defendants William Folkestad, Dean of the College of Humanities, Arts and Social Sciences; Mohamed Abdelrahman, Provost and Executive Vice President for Academic Affairs; and Timothy Mottet, CSUP President, in their individual and official capacities, Plaintiffs bring the remaining two claims pursuant to 42 U.S.C. § 1983:

5. "First Amendment Violation – Freedom of Speech," ECF No. 44 ¶¶ 154–85, and

6. "First Amendment Violation – Right to Petition," *id.* ¶¶ 186–217.

The individual Defendants Folkestad, Abdelrahman, and Mottet have moved to dismiss the Third Amended Complaint; therefore, only the last two claims for First Amendment violations are at issue in their present Motion to Dismiss.[1]  *See* ECF No. 47.

Plaintiffs allege the following facts pertinent to Defendants' motion to dismiss these First Amendment claims.  In September of 2018, CSUP cancelled several classes within the Department of Mass Communications, citing low student enrollment as the cause.  ECF No. 44 ¶ 23–24.  Defendant Dean Folkestad directed Sam Lovato, the Mass Communications Chair and Professor, to request that the professors within the Department of Mass Communications submit a teaching or research idea.  *Id.* ¶ 25.  Although Dr. Cowden submitted a teaching and research idea, Mr. Lovato and Defendant Dean Folkestad denied the suggested idea.  *Id.* ¶¶ 26–27.  Dr. Cowden and Dr. Gula were assigned to complete a mandatory administrative project that was unrelated to their faculty positions and that was not required of a male faculty member of the College of Humanities and Social Sciences, who "was permitted to pursue a non-administrative project that was relevant to his research and teaching goals."  *Id.* ¶¶ 28–30.

Subsequently, "[a]t the beginning of 2019, Dr. Cowden complained on behalf of herself and Dr. Gula about gender discrimination due to disparate treatment between female and male faculty."  *Id.* ¶ 31.  On January 15, 2019, Dr. Cowden emailed Defendant Provost Abdelrahman and Defendant Dean Folkestad "regarding her complaints of

---

[1] Defendant CSUP has filed a Partial Answer to the Third Amended Complaint and Jury Demand, answering the claims and allegations pertinent to that Defendant.  *See* ECF No. 46 ¶ 130 ("The remaining claims in paragraphs 154–217 are against Defendants Mottet, Folkestad, and Abdelrahman in their individual and official capacities, and are the subject of a Motion to Dismiss.  Thus, no response is required from CSUP."). Defendant CSUP has not moved to dismiss any part of the Third Amended Complaint.

gender discrimination on behalf of the female faculty based on recent events that occurred within the College of Humanities and Social Sciences Mass Communications Department."  *Id.* ¶¶ 40–52.  Defendant Provost Abdelrahman "directed Dr. Cowden to discuss her complaints of discrimination with Joshua Ernst, Director & Title IX Coordinator" but, according to Plaintiffs, "did not take action to protect Dr. Cowden and Dr. Gula from further discrimination and retaliation after their protected complaints of discrimination."  *Id.* ¶¶ 53, 60.  "The next day, on January 16, 2019, Dr. Cowden and Dr. Gula met with Mr. Ernst and filed a formal complaint of gender discrimination."  *Id.* ¶¶ 61. CSUP opened an investigation regarding Plaintiffs' complaints of discrimination.  *Id.* ¶¶ 85, 89, 105.   Plaintiffs allege that after their complaints about Mr. Lovato's discriminatory conduct, "he began retaliating against Plaintiffs even further by creating a more hostile work environment and treating them less favorably than their male colleagues."  *Id.* ¶ 64.

On or around February 11, 2019, Dr. Cowden and Dr. Gula received their annual performance reviews from Professor and Dean of the College of Humanities and Social Sciences, Leticia Steffen, and those reviews indicated that the Plaintiff professors "m[et] expectations."  *Id.* ¶¶ 72, 74.  Plaintiffs allege that Dr. Gula had previously "exceed[ed] expectations"; that Dr. Cowden's performance review "did not acknowledge [her] achievements related to her research"; that in March of 2018, prior to her complaints of discrimination, Dr. Cowden "received positive feedback and encouragement at her pre-tenure review" and she was told to "improve her student evaluations"; and that she "met her goal of improved student feedback."  *Id.* ¶¶ 70, 74, 76, 80, 82.  According to Plaintiffs,

"[t]he negative and intentional shift toward Dr. Cowden and Dr. Gula and their contributions to CSUP occurred after their complaints of discrimination and was a direct result of the protected complaints of discrimination." *Id.* ¶ 84. On February 24, 2019, Dr. Cowden "filed a written objection to her 2018 performance review due to its discriminatory and retaliatory nature." *Id.* ¶ 86.

On April 10, 2019 "CSUP informed Dr. Cowden and Dr. Gula, through letter communication, that they were each recommended for termination from their tenure-track Associate Professor positions" by Mr. Lovato and Dean Folkestad. *Id.* ¶¶ 88–89. "The April 10, 2019 letter stated that the recommendation was made due to "budgetary issues, including 'declining enrollment' and 'over staffing'" and that the recommendation was made pending approval by the President, [Defendant] Timothy Mottet." *Id.* ¶¶ 92–93. On April 11, 2019 "and the days following," Dr. Cowden and Dr. Gula posted on social media and made statements to "news outlets in the Pueblo area" "that [College of Humanities and Social Sciences] female faculty members were being terminated while male faculty members were permitted to keep their jobs." *Id.* ¶¶ 96–97. They also discussed the impact that CSUP's decisions and alleged gender discrimination would have on students. *Id.* ¶ 114.

On May 13, 2019, Plaintiffs received a letter from Defendant Mottet, approving the recommendation of Defendant Provost Abdelrahman that Plaintiffs should not be re-appointed to their tenure-track positions. *Id.* ¶ 100. Then on May 30, 2019, Defendant Dean Folkestad sent Plaintiffs each "a letter stating that they would not be assigned a teaching course load, nor would they have any service or research obligations to CSUP

for the 2019–2020 academic year." *Id.* ¶¶ 107, 109. However, CSUP would pay Plaintiffs' salary and benefits for the 2019–2020 academic year. *Id.* ¶ 111. CSUP "admitted" that Plaintiffs' "statements in . . . public postings and newspaper articles are the reason CSU-Pueblo decided to pay [them] but not have them teach further classes." *Id.* ¶ 115. Plaintiffs allege that "[i]n June 2019, [they] received communications that evidenced additional funds were available, contrary to CSUP's allegations that faculty cuts were necessary for 'over staffing.'" *Id.* ¶ 120.

As stated above, Plaintiffs bring claims against Defendants Folkestad, Abdelrahman, and Mottet, in their official and individual capacities, for violations of Plaintiffs' First Amendment right to freedom of speech and right to petition. *Id.* ¶¶ 154–217. Those individual Defendants move for dismissal of these claims against them in their official capacities for lack of subject matter jurisdiction because they have Eleventh Amendment immunity. ECF No. 47 at 3–4, 13–14. They also move for dismissal under Rule 12(b)(6), arguing that Plaintiffs fail to state a First Amendment claim and that Defendants enjoy qualified immunity. *Id.* at 4–12.

## II.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

A defendant may move to dismiss a complaint for "lack of subject matter jurisdiction" under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). "The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quotations and citation omitted); *see also Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D.

Colo. 2001) (Babcock, J.) ("A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)."). "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quoting *Gunn v. Minton*, 568 U.S. 251, 256 (2013)). "The party invoking a federal court's jurisdiction bears the burden of establishing subject-matter jurisdiction," *id.* (citing *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017)), and "there is a presumption against federal jurisdiction," *Neiberger*, 150 F. Supp. 2d at 1120.

"Challenges to jurisdiction under Fed. R. Civ. P. 12(b)(1) generally take two forms: facial attacks on the sufficiency of jurisdictional allegations and factual attacks on the accuracy of those allegations." *Neiberger*, 150 F. Supp. 2d at 1120 (citing *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995), *abrogated on other grounds*, *Ratheal v. United States*, No. 20-4009, 2021 WL 3619902, at *3 (10th Cir. Aug. 16, 2021)). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt*, 46 F.3d at 1003. "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997) (citing *Holt*, 46 F.3d at 1003).

**B.     Failure To State a Claim**

A defendant may move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  "Although for the purposes of a motion to dismiss, [courts] must take all of the factual allegations in the complaint as true," *id.*, "[c]ourts are permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the document's authenticity.'"  *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

### III.     ANALYSIS

**A.     Subject Matter Jurisdiction: Eleventh Amendment Immunity**

Defendants argue that Plaintiffs cannot establish that this Court has subject matter jurisdiction over their claims for damages against the individual Defendants, in their official capacities, because the Eleventh Amendment bars such claims.  ECF No. 47 at 3–4.

Plaintiffs "stipulate that of the remedies sought, [they] only seek prospective, injunctive relief against the Administrators in their official capacities." ECF No. 49 at 4. Therefore, the Court need not consider Defendants' arguments regarding whether Eleventh Amendment immunity bars claims for damages against Defendants in their official capacities. Further, the Court need not consider any claim for injunctive relief against the Defendants in their individual capacities because "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafter v. Melo*, 502 U.S. 21, 30 (1991)). Hence, the Court only considers whether Eleventh Amendment immunity bars Plaintiffs' claims for injunctive relief against the Defendants in their official capacities.

Plaintiffs seek prospective, injunctive relief in the form of "reinstatement." ECF No. 44 at 26; ECF No. 49 at 4. Defendants argue that, under the Eleventh Amendment and *Ex parte Young*, 209 U.S. 123 (1908), the Court lacks subject matter jurisdiction over Plaintiffs' claims for prospective relief against the individual Defendants in their official capacities who cannot provide the prospective relief requested. ECF No. 47 at 4; *see also* ECF No. 74 at 2 (noting that Defendants' *Ex parte Young* defense was raised only on behalf of Defendants Dean Folkestad and Provost Abdelrahman).

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Hence, "[t]he Eleventh Amendment

generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Elephant Butte Irrigation District of New Mexico v. Department of Interior*, 160 F.3d 602, 607 (10th Cir. 1998).  However, *Ex parte Young*, 209 U.S. 123 (1908) permits suits against state officials in their official capacity for prospective, injunctive relief against ongoing violations of federal law.

According to Defendants, Provost Abdelrahman and Dean Folkestad "do not have authority to provide Plaintiffs any relief whatsoever" because "Plaintiffs must sue the official who can provide prospective relief."  ECF No. 47 at 4 (citing *Doe v. University of Colo., Boulder*, 255 F. Supp. 3d 1064, 1083 (D. Colo. 2017); *Peterson*, 707 F.3d at 1207; *see also* ECF No. 47-2 (Declaration of Johnna Doyle, CSUP Deputy General Counsel)). Indeed, the Supreme Court held in *Ex parte Young* that:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex parte Young*, 209 U.S. at 157; *see also Klein v. University of Kan. Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) ("In *Ex Parte Young*, the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment.").  Plaintiffs argue that Provost Abdelrahman and Dean Folkestad "have sufficient connection with the act or conduct," noting that "the connection to the unconstitutional act may come by way of 'administrative delegation' or a 'demonstrated practice.'"  ECF No. 49 at 4–5 (quoting *Garcia v.*

*Metropolitan State Univ. of Denver*, No. 19-cv-02261-RBJ, 2020 WL 886219, at *7 (D. Colo. Feb. 24, 2020) (Jackson, J.); *Peterson*, 707 F.3d 1197).

However, courts in the Tenth Circuit have applied Eleventh Amendment immunity in similar circumstances.  *See, e.g.*, *Garcia*, 2020 WL 886219, at *7 (finding that the University president had sufficient "supervisory power and may compel compliance from whatever officials are directly responsible for enforcing the challenged conduct," as did two other administrators who "could lift [the plaintiff student's] suspension and alter the other sanctions imposed on her," but that the remaining defendants did not "exercise relevant supervisory power or authority to compel compliance"); *Klein*, 975 F. Supp. at 1417 (finding that "none of the individuals that [the plaintiff] ha[d] sued ha[d] the power to provide him with the relief he s[ought]—reinstatement" because only the "current Chancellor" of the University had that authority).  Here, both administrative delegation and demonstrated practice point to President Mottet, rather than Provost Abdelrahman and Dean Folkestad, as the officer with "some connection" to the challenged action.  *See Peterson*, 707 F.3d at 1207; *see also Ex parte Young*, 209 U.S. at 157.

First, Defendants have provided a Declaration from CSUP's Deputy General Counsel, stating that "the authority to appoint personnel" has not been "sub-delegated" to the Provost, Defendant Abdelrahman, or the Dean, Defendant Folkestad.[2]  ECF No. 47-

---

[2] Plaintiffs allege in their Third Amended Complaint that "[i]ndividual Defendants Folkestad . . . and Abdelrahman are final policy makers for Defendant CSUP, or have been delegated final policymaking authority," in contradiction to the Declaration of CSUP's deputy general counsel.  *Compare* ECF No. 44 ¶¶ 167, 200, *with* ECF No. 49-2 ¶ 3.  As stated, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court . . . .  has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)," *Holt*, 46 F.3d at 1003, and reference to such materials does not convert the motion to dismiss into one for summary judgment, *SK Finance SA*, 126 F.3d at 1275.

2 ¶ 3.  Hence, there was no relevant "administrative delegation" of authority to Defendants Abdelrahman and Folkestad.[3]   *See Peterson*, 707 F.3d at 1207.   Second, Plaintiffs' allegations demonstrate that the April 10, 2019 recommendation that they be terminated "was *pending approval* by the President, Timothy Mottet"; that he "was required to approve and make the final decision not to reappoint Plaintiffs' employment"; that "[o]n May 13, 2019, Plaintiffs each received a letter from Mr. Mottet. . . , stating that at the recommendation of Dr. Abdelrahman, *Mr. Mottet approved the non-reappointment* of Plaintiffs' tenure-track positions"; and that "*[a]s a result of* Mr. Mottet's decision, Plaintiffs' employment from CSUP was terminated."   ECF No. 44 ¶¶ 92–93, 100–01 (emphasis added).   Moreover, the Declaration of CSUP's Deputy General Counsel states that Dean Folkestad has "retired from [CSUP]" and therefore "has no authority to act on the school's behalf with regard to any injunctive or declaratory relief that the court may order."   *Id.* ¶ 5.   Therefore, Plaintiffs' own allegations, combined with the uncontroverted facts in Defendants' Declaration, indicate that the "demonstrated practice" was that Defendant Mottet would make the relevant final employment decisions at issue here.   *See Peterson*, 707 F.3d at 1207.  For these reasons, the Court finds that it does not possess jurisdiction

---

[3] Plaintiffs attack the Declaration of Johnna Doyle as "conclusory and self-serving" and not "based on personal knowledge, set[ting] forth facts as would be admissible into evidence, [or] show[ing] that the affiant is competent to testify to the matters stated."  ECF No. 49 at 6 (citing *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)). However, the University's Deputy General Counsel, who is likely competent to testify as to matters of CSUP policy, declares "under penalty of perjury" that she has "personal knowledge" of the statements in the Declaration and that she is "familiar with the Board of Governors of the Colorado State University System polic[ie]s outlining the powers and duties of [CSUP's] president."  ECF No. 47-2 at 1.  On the other hand, Plaintiffs provide nothing other than their conclusory allegations and arguments to support their attack of these statements.  Therefore, the Court, exercising its "wide discretion," does consider the statements in the Declaration in deciding Defendants' Motion to Dismiss.  *See Holt*, 46 F.3d at 1003.

over Defendants Provost Abdelrahman and Dean Folkestad, in their official capacities, as to the prospective, injunctive relief sought on the First Amendment claims.

Defendants do not argue that Plaintiffs' request for prospective, injunctive relief should be dismissed against CSUP President Mottet, in his official capacity, and they do not contest whether Defendant Mottet possesses the authority providing him with "some connection" to the prospective, injunctive relief Plaintiffs seek. *See* ECF No. 47 at 4; ECF No. 74 at 2. Indeed, the Declaration of CSUP's Deputy General Counsel states that "[t]he president of [CSUP] has been delegated with the power to appoint and enter into employment relationships with all personnel and the president is granted the exclusive power to remove employees." ECF No. 47-2 ¶ 3. Therefore, the Court finds that it possesses jurisdiction over the prospective, injunctive relief sought in Plaintiffs' First Amendment claims against Defendant Mottet in his official capacity.

Given that the Court does not possess jurisdiction to consider the First Amendment claims against Defendants Dean Folkestad and Provost Abdelrahman in their official capacities, the Court does not consider the merits of those claims as against those defendants. *See, e.g.*, *Caballero*, 945 F.3d at 1273 ("[A] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."). However, because the Court does possess jurisdiction to consider these claims, to the extent they request prospective injunctive relief against Defendant Mottet in his official capacity, and because Defendants do not challenge this Court's jurisdiction to consider these claims requesting damages against the individual Defendants in their individual capacities, the Court proceeds to

analyze Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim for damages against Defendants Folkestad, Abdelrahman, and Mottet, in their individual capacities, and for injunctive relief as to Defendant Mottet, in his official capacity.

### B.    Failure To State a Claim: First Amendment Claims

Defendants argue that Plaintiffs fail to state a First Amendment claim and move for dismissal under Rule 12(b)(6) because (1) Plaintiffs' claims fail to fulfill the requirements of the five prongs of the *Garcetti/Pickering* test and (2) the individual Defendants named in their individual capacities possess qualified immunity.  ECF No. 47 at 4–13.  The Court addresses each argument below.

### 1.    *Garcetti/Pickering* Analysis

"The test for determining whether [a plaintiff] was denied her constitutional rights by being terminated for speaking on matters of public concern is the *Pickering* test, now modified by the Supreme Court's decision in *Garcetti v. Ceballos*, [547 U.S. 410 (2006)]." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301–02 (10th Cir. 2009) (citing *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007); *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).

> The test comprises five elements, called 'prongs': (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon*, 553 F.3d at 1302.

As stated, Plaintiffs bring First Amendment claims regarding both their right to freedom of speech, ECF No. 44 ¶¶ 154–85, and their right to petition, *id.* ¶¶ 186–217. Plaintiffs' right to petition claim appears to refer to their internal complaints of gender discrimination at CSUP that they made in January of 2019, and which gave rise to an investigation that was also initiated in January of 2019—before their February 2019 annual performance reviews and their April 10, 2019 letters "recommend[ing] . . . [their] non-reappointment."  *See id.* ¶¶ 31–91.  On the other hand, Plaintiffs' freedom of speech claim appears to pertain to Plaintiffs' "public statements," including social media postings and statements to news outlets, starting on April 11, 2019—before they received the May 13, 2019 letter from Defendant Mottet "approv[ing] the non-reappointment of Plaintiffs' tenure-track positions" and before they received they May 30, 2019 letter from CSUP "stating that they would not be assigned a teaching course load" or have any "service or research obligations to CSUP for the 2019–2020 academic year."  *See id.* ¶¶ 96–107.

However, Defendants provide no argument in their motion to dismiss regarding Plaintiffs' right to petition claim.  *See* ECF No. 47 at 5–13 (discussing Plaintiffs' First Amendment claim only with regard to their social media posts and cursorily stating that the *Garcetti/Pickering* analysis applies to "a First Amendment claim under any theory"). A party "waive[s] [an] issue by failing to make any argument or cite any authority to support his assertion."  *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996); *see also, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1003 n.10 (D. Colo. 2016) (Moore, J.) (finding that "for the purpose of considering Defendants' motion to dismiss," an argument "raised in a perfunctory manner," was waived).   Although

Defendants argue in their Reply that they have "established that . . . Plaintiffs' internal complaints prior to their non-reappointment . . . fail[s] to meet the five-part *Garcetti/Pickering* test," ECF No. 52 at 2; *see also id.* at 3, "[t]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (internal quotations and citation omitted); *see also Brammer-Hoelter*, 492 F.3d at 1207 (quoting *Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004)) ("Issues not raised in the opening brief are deemed abandoned or waived.").  Therefore, here, Defendants have waived any argument that Plaintiffs' First Amendment right to petition claim should be dismissed for failure to state a claim, and that claim shall proceed against Defendant Mottet in his official capacity.

In addition, Defendants have not made any arguments regarding Plaintiffs' speech to "news outlets in the Pueblo area," ECF No. 44 ¶ 96; again, Defendants' arguments only pertain to Plaintiffs' statements on social media.  *See* ECF No. 47 at 6–13.  Therefore, Defendants have waived any argument that Plaintiffs' First Amendment freedom of speech claim pertaining to statements to "news outlets in the Pueblo area that the [College of Humanities and Social Sciences] female faculty members were being terminated while male faculty members were permitted to keep their jobs," ECF No. 44 ¶ 96, should be dismissed for failure to state a claim.  *See, e.g.*, *Hardwell*, 80 F.3d at 1492; *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d at 1003 n.10.  Therefore, the First Amendment freedom of speech claim shall proceed against Defendant Mottet in his official capacity, as it pertains to Plaintiffs' statements to news outlets.

The only remaining issue is whether Plaintiffs' First Amendment freedom of speech claim pertaining to their social media posts should proceed.  The Court also finds that Plaintiffs have, for purposes of this motion to dismiss, adequately alleged a First Amendment violation under the prongs of the *Garcetti/Pickering* analysis, discussed below in turn.

### a.    Whether the Speech Was Made Pursuant to the Employees' Official Duties

The first step of the *Garcetti/Pickering* analysis is to determine "whether the speech was made pursuant to an employee's official duties."  *Dixon*, 553 F.3d at 1302.  "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Brammer-Hoelter*, 492 F.3d at 1203.  "The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting 'in his or her professional capacity.'"  *Id.* at 1203.  "[N]ot all speech that occurs at work is made pursuant to an employee's official duties[,] . . . . [n]or is all speech about the subject matter of an employee's work necessarily made pursuant to the employee's official duties."  *Id.* at 1204.  Furthermore, "[t]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."  *Lane v. Franks*, 573 U.S. 228, 240 (2014).  "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  *Id.*

The Court "must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Brammer-Hoelter*, 492 F.3d at 1204. Here, Plaintiffs allege that their statements concerned, generally, first, "discrimination at CSUP." ECF No. 44 ¶ 97; *see also id.* ¶ 96 (describing statements "that the [College of Humanities and Social Sciences] female faculty members were being terminated while male faculty members were permitted to keep their jobs"); *id.* ¶ 114.a.– b. ("gender discrimination" and "treatment of females at CSUP"). Second, Plaintiffs' statements concerned the "impact CSUP decisions will have on students," including "the lack of options for 'newer majors' as a result of CSUP decisions." *Id.* ¶ 114.c.–d.; *see also id.* ¶ 97 (describing Plaintiffs' statements about "the negative impact [discrimination at CSUP] had on the students, faculty, and CSUP"). Plaintiffs' allegations in the Complaint regarding the subject matter of their statements are generally consistent with the subject matter of the social media postings that Defendants provide as Exhibit A to their motion to dismiss. *See* ECF No. 47-1.[4]

Defendants argue that Plaintiffs' social media statements were made pursuant to their official duties because they were made on the department's social media page; the statements were largely addressed to students; the professors refer to each other by title ("Dr. Gula" and "Dr. Cowden"); Plaintiffs comment about school business; Plaintiffs made requests of students; and a Plaintiff reprimanded another professor for not congratulating

---

[4] The Court may consider this exhibit, which is a "matter[] outside the pleadings," in deciding this Rule 12(b)(6) motion without converting it to a motion for summary judgment because "the document is referred to in the complaint and is central to the plaintiff's claim" and there is no dispute about the document's authenticity. *See Weise v. Colorado Springs*, 421 F. Supp. 3d 1019, 1031–32 (D. Colo. 2019) (Brimmer, C.J.); *see also Toone*, 716 F.3d at 521.

"ALL award recipients."  ECF No. 47 at 6.  However, as the Supreme Court made clear in *Lane* and as the Tenth Circuit made clear in *Brammer-Hoelter*, the fact that employees speak at work or about information involving the subject matter of their employment and acquired during the course of their employment does not convert speech made as a citizen into speech made as an employee.  *See Lane*, 573 U.S. at 240; *Brammer-Hoelter*, 492 F.3d at 1203.  Plaintiffs here were speaking as citizens, rather than as public employees.

    **b. Whether the Speech Was on a Matter of Public Concern**

  At the second step of the *Garcetti/Pickering* analysis, "if an employee does not speak pursuant to [her] official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern."  *Brammer-Hoelter*, 492 F.3d at 1203; *see also Dixon*, 553 F.3d at 1302.  "In deciding what is a matter of public concern, [courts] are required to consider the content, form, and context of a given statement, as revealed by the whole record."  *Brammer-Hoelter*, 492 F.3d at 1205 (internal quotations and citations omitted).  Although the Tenth Circuit has held that "speech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration" are not matters of public concern, generally, "[s]tatements revealing official impropriety usually involve matters of public concern."  *Id.* at 1205.  For example, "[s]peech concerning potential illegal conduct by government officials is inherently a matter of public concern."  *Id.* at 1206 (holding that former teachers' speech regarding "whether the [school's] code of conduct could legally limit Plaintiff's

freedom of speech and whether [the former principal's] attempts to do so violated the First Amendment [were] clearly matters of public concern").

In addition, "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (internal quotations and citation omitted).   "The arguably 'inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).

Here, the social media posts involve alleged gender discrimination at CSUP.  Such speech regarding alleged "official impropriety" is the type of statement that the Tenth Circuit has held to be a matter of public concern.  *See Brammer-Hoelter*, 492 F.3d at 1205.  Further, statements regarding the impact of CSUP's decisions on students and others in the community are "fairly considered as relating to [a] matter of . . . concern to the community." *See Lane*, 573 U.S. at 241.

Defendants argue that Plaintiffs' statements "are about their own non-reappointment" and were made "to air personal grievances" and therefore do not involve "a matter of public concern."  ECF No. 47 at 8.  Defendants cite *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996), in which the Tenth Circuit held that "[i]n deciding how to classify particular speech, courts focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *See* ECF No. 47 at 7.  However, the Tenth Circuit also

held in that case that "[t]he objectives, purposes, and mission of a public university are undoubtedly matters of public concern" and that speech criticizing a college's reduction-in-force plan was a matter of public concern.  *Gardetto*, 100 F.3d at 813–14.

Plaintiffs' statements do not center around their personal grievances, but instead focus on the broader situation at CSUP.  *See, e.g.*, 47-1 at 1 ("Please read carefully: why out of eight people who received one year terminal contracts are FOUR of them FEMALE MASS COMM PROFESSORS????").  The only statements Plaintiffs made about their individual situations were (1) Plaintiff Gula responded to the question "Who are all the professors that have been affected?" by listing the names of the four female professors who received termination letters, including herself and Plaintiff Cowden, and (2) Plaintiff Gula stated, "they gave us a terminal year, but hey we need to find new jobs NOW and they want to somehow restructure the department and who knows what they have planned."  ECF No. 47-2 at 4, 6.  Similar to the speech in *Gardetto*, the statements here were made in the context of "a broader public purpose" of discussing alleged discrimination and planned changes at CSUP, which touch on the university's "objectives, purposes, and mission."  *See Gardetto*, 100 F.3d at 812–13.  The Court finds that Plaintiffs' speech here was on a matter of public concern.[5]

---

[5] Defendants also argue that, by posting, "STUDENTS you need to FIGHT," Plaintiff Gula encouraged conduct "for the purpose of interfering with CSUP's internal decisions to integrate the Department with art and music and interfere with CSUP's ability to contract with adjunct professors."  ECF No. 47 at 9.  However, this argument does not bear on the Court's analysis of the second prong of the *Garcetti/Pickering* analysis, but instead relates to the third prong of "whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests," addressed below.  *See Dixon*, 553 F.3d at 1302.

> **c.** **Whether the Government's Interests, as Employer, in Promoting the Efficiency of the Public Service Outweigh the Plaintiffs' Free Speech Interests**

The inquiry at the third step of the *Garcetti/Pickering* analysis is "whether the employer has an efficiency interest which would justify it in restricting the particular speech at issue." *Brammer-Hoelter*, 492 F.3d at 1207 (internal quotations and citation omitted); *see also Dixon*, 553 F.3d at 1302. "Arguably, 'the only public employer interest that can outweigh a public employee's recognized speech rights is the interest in avoiding direct disruption, *by the speech itself*, of the public employer's *internal* operations and employment relationships." *Brammer-Hoelter*, 492 F.3d at 1207 (quoting *Flanagan v. Munger*, 890 F.2d 1557, 1566 (10th Cir. 1989)) (emphasis in original). "[T]he *employer* bears the burden of justifying its regulation of the employee's speech." *Id.* (emphasis in original).

Defendants argue that because Plaintiffs made false statements on social media about CSUP and their department, "Plaintiffs' statements contradicted and interfered with CSUP's effort to give a consistent, uniform explanation to alumni and students about its need to make changes based upon declining student enrollment." ECF No. 47 at 11; *see also id.* at 11–12 ("Plaintiffs' social media posts that '[u]nfortunately the department has been dissolved and will now be gone' had the potential to scare current students into transferring to other higher education institutions and to deter perspective freshman students from enrolling."). However, the Tenth Circuit has rejected the argument that "reaction by offended members of the public would adversely impact its external relationships and operations" was sufficient to carry the government employer's burden

of justifying its regulation of employee speech. *Flanagan*, 890 F.2d at 1566 (finding that "[t]he record is devoid of evidence of actual, potential, disruption of the department's *internal* operations—no discipline problems, no disharmony, no impact on close working relationships, and no performance problems by plaintiffs") (emphasis added). "Apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* at 1567. Therefore, Defendants' arguments about the impact that Plaintiffs' statements would have on CSUP's relationship with students, prospective students, and alumni do not carry Defendants' burden here.[6]

Defendants also argue that Plaintiff Gula's social media post "suggest[ing] that Department Chair Professor Lovato was playing favoritisms" was "made to destroy working relationships within the Department." ECF No. 47 at 12. However, this post was Plaintiff Gula's response to a post congratulating "all the MC students who received scholarships and honors at [an] award luncheon," in which Plaintiff Gula asked "[w]hy wasnt [sic] a picture shared of ALL award recipients like in previous years and this year only rev recipients with Lovato is this the future of mccnm?" and stated, "Thanks for congratulating all award winners . . . as is proper." ECF No. 47-1 at 29–30. Hence, this post apparently pertained to Mr. Lovato's alleged favoritism of *students*, rather than of colleagues within the department. Therefore, again, this post did not affect "*internal* . . . employment relationships" at the university or the department. *See Brammer-Hoelter*, 492 F.3d at 1207. Defendants have not carried the burden of demonstrating that their

---

[6] The same reasoning applies to the arguments noted above in footnote 5. *See supra* note 5.

"interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff[s'] free speech interests."  *See Dixon*, 553 F.3d at 1302.

### d.     Whether the Protected Speech was a Motivating Factor for the Adverse Employment Action

At the fourth step of the *Garcetti/Pickering* analysis, the Court must determine "whether the protected speech was a motivating factor in the adverse employment action."  *Dixon*, 553 F.3d at 1302.  Plaintiffs allege that "CSUP admitted" that Plaintiffs' "statements in these public postings and newspaper articles are the reason CSU-Pueblo decided to pay your clients but not have them teach further classes."  ECF No. 44 ¶ 115. Defendants do not dispute this allegation[7] and instead argue that CSUP's actions with regard to Plaintiffs' employment "would not deter a reasonable person from exercising their First Amendment rights."  ECF No. 47 at 12 (citing *Couch v. Board of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1238 (10th Cir. 2009)).  Defendants cite *Belcher v. City of McAlester*, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003), in which the Tenth Circuit held that "[i]mplicit in the *Pickering* test is a requirement that the public employer have taken some adverse employment action against the employee."  ECF No. 47 at 12. However, the argument that, even though Plaintiffs were terminated, because they were paid their full salaries for the subsequent year, their termination was not an "adverse employment action," *see id.*, flies in the face of logic and the law.  Termination is not "inconsequential," nor does it have "speculative consequences."  *See Belcher*, 324 F.3d

---

[7] Plaintiffs have filed an email from defense counsel to Plaintiffs' counsel, stating, "[y]our clients' statements in these public postings and newspaper articles are the reason CSU-Pueblo decided to pay your clients but not have them teach further classes."  ECF No. 49-4 at 1.  Because Defendants do not dispute Plaintiffs' allegation in the complaint reflecting this emailed statement, the Court need not consider the email in deciding the present motion.  *See* ECF No. 44 ¶ 115; ECF No. 47 at 12–13.

at 1207 n.4.   The Tenth Circuit held in *Belcher* that a written reprimand constitutes adverse employment action.   *Id.*   In comparison, termination, regardless of the terms, certainly constitutes an adverse employment action.   *See, e.g.*, *Duda v. Elder*, 7 F.4th 899, 912 (10th Cir. 2021) (finding that the defendant had "not carried his burden . . . to show that his interest in maintaining an efficient workplace . . . outweighed [the plaintiff's] free speech interest" where "the record show[ed] [plaintiff's] *termination* was based on . . . discrimination") (emphasis added).

Defendants also argue that the fact that Plaintiffs, themselves, were not deterred from speaking indicates that a reasonable person would not be deterred from speaking. ECF No. 47 at 12.   However, Defendants ignore the chronology of events alleged. Plaintiffs allege that it was the day after receiving the letter recommending—pending approval by University President Mottet—Plaintiffs' non-reappointment that Plaintiffs began posting on social media.   *See* ECF No. 44 ¶¶ 89, 93, 96.   It was approximately a month later that Plaintiffs received a letter from President Mottet confirming that he accepted the recommendation to terminate them.   *Id.* ¶ 100.   Two weeks after that, Plaintiffs received a letter "removing all responsibilities associated with their Associate Professor role."   *Id.* ¶ 109.   Therefore, the adverse action of termination and removal from their roles did not take place until after Plaintiffs' speech.   Defendants' theory that the adverse action in question did not actually deter Plaintiffs from speaking is not supported by the facts alleged in the Third Amended Complaint.   The Court finds that the fourth prong of the *Garcetti/Pickering* analysis weighs in Plaintiffs' favor.

e.   **Whether the Defendant Would Have Reached the Same Employment Decision in the Absence of the Protected Conduct**

The fifth and final inquiry in the *Garcetti/Pickering* analysis is "whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Dixon*, 553 F.3d at 1302. Defendants do not argue in their opening brief that Plaintiffs' Third Amended Complaint fails to meet this fifth prong of the analysis. *See* ECF No. 47 at 6 ("Plaintiffs' Complaint does not meet the first, second, third, or fourth prong of the *Garcetti/Pickering* analysis."). Defendants only raise arguments regarding this fifth prong in their Reply brief. *See* ECF No. 52 at 7. As stated, "[t]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." *Reedy*, 660 F.3d at 1275; *see also Brammer-Hoelter*, 492 F.3d at 1207. Therefore, Defendants appear to have waived this issue for purposes of the present motion to dismiss. Given the Court's findings that Plaintiffs' social media postings were made as citizens, rather than as employees in the course of their official duties; that the speech was on a matter of public concern; that Defendants did not establish that CSUP's interests outweighed Plaintiffs' free speech interests; that Defendants took an adverse employment action against Plaintiffs; and that Defendants waived the issue of whether they would have reached the same employment decision in the absence of the protected conduct, Plaintiffs have sufficiently alleged a First Amendment right to petition claim to survive Defendants' present motion to dismiss the First Amendment claims for injunctive relief against Defendant Mottet in his official capacity. *See Dixon*, 553 F.3d at 1302.

### 2.     Qualified Immunity

"Qualified immunity 'protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Weise v. Casper*, 593 F.3d 1163, 1166 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Pearson*, 555 U.S. at 232 ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").  "[Q]ualified immunity is unavailable 'in a suit to enjoin future conduct . . . .'"  *Pearson v. Callahan*, 555 U.S. 223, 242–43 (10th Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 859 (1998) (Stevens, J., concurring)).  Therefore, the Court only assesses whether qualified immunity applies to Plaintiffs' claims for damages against the individual Defendants in their individual capacities.

"The qualified immunity inquiry has two prongs: whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation."  *Id.* (quoting *Pearson*, 555 U.S. at 232).  "In their discretion, courts are free to decide which prong to address first 'in light of the circumstances of the particular case at hand.'"  *Id.* (quoting *Pearson*, 555 U.S. at 236).  "Generally, when a defendant asserts qualified immunity, the plaintiff carries [this] two-part burden."  *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013).  However, "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment.  On a motion to dismiss, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for

[constitutionality]."  *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022) (internal quotations and citations omitted) (alteration in original) (emphasis in original).

Here, the Court finds, as discussed above, that "the facts that [Plaintiffs] . . . alleged" in the Third Amended Complaint "make out a violation of a constitutional right." *See Pearson*, 555 U.S. at 232; *see also Thompson*, 23 F.4th at 1256.  The Court further finds that "the right at issue was 'clearly established' at the time of defendants' alleged misconduct."  *Id.*  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Cruz v. City of Laramie*, 239 F.3d 1183, 1187 (10th Cir. 2001).  However, Plaintiffs are "not required to show . . . that the very act in question previously was held unlawful in order to establish an absence of qualified immunity."  *Id.*  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"; however, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted).

The First Amendment rights of these professors were sufficiently clear such that a reasonable university administrator could have recognized them.  There is Tenth Circuit authority establishing the following: (1) Speaking about or at work does not mean that Plaintiffs were speaking as employees, rather than as citizens.  *See Lane*, 573 U.S. at 240; *Brammer-Hoelter*, 492 F.3d at 1203.  (2) "The objectives, purposes, and mission of

a public university are undoubtedly matters of public concern," *Gardetto*, 100 F.3d at 812, as are allegations of official impropriety, *Brammer-Hoelter*, 492 F.3d at 1205. (3) Apprehension of disturbance external to the operation of the University, as opposed to its "internal operations," is not enough to outweigh the right to freedom of expression." *Brammer-Hoelter*, 492 F.3d at 1207; *see also Flanagan*, 890 F.2d at 1567. (4) Termination constitutes an adverse employment action that would deter a reasonable employee from speaking. *See, e.g.*, *Belcher*, 324 F.3d at 1207 n.4; *see also Langley v. Adams County*, 987 F.2d 1473, 1479 (10th Cir. 1993) ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."); *Patrick v. Miller*, 953 F.2d 1240, 1247–48 (10th Cir. 1992) (finding that "it was clearly established when Defendants terminated Patrick that his statements during the Retirement Board meeting would constitute protected speech").[8]   Hence, the Court finds that Plaintiffs' rights regarding Defendants' arguments for each of the *Garcetti/Pickering* prongs were clearly established, and for purposes of this stage of the litigation and this motion to dismiss, Plaintiffs have carried their burden to rebut Defendants' qualified immunity defense.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the individual Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint, ECF No. 47, as follows:

---

[8] As discussed, Defendants appear to have waived the issue of whether they would have reached the same employment decision absent the protected conduct.  *See supra* Section III.B.1.e.; *Dixon*, 553 F.3d at 1302.

- Claims Five and Six in Plaintiffs' Third Amended Complaint (the First Amendment claims) are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction against Defendants Folkestad and Abdelrahman, in their official capacities.

- The First Amendment claims, to the extent they seek relief in the form of damages, are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction against Defendant Mottet, in his official capacity; and

- The First Amendment claims, to the extent they seek prospective injunctive relief, shall proceed against Defendant Mottet, in his official capacity, and to the extent they seek relief in the form of damages, these claims shall proceed against Defendants Folkestad, Abdelrahman, and Mottet, in their individual capacities.

DATED:  August 23, 2022

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge